Sam Meziani (9821)
Amberly Page (17095)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah  84111
Telephone:  801-441-9393
SMeziani@GAPClaw.com
APage@GAPClaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF UTAH – CENTRAL DIVISION**

| | |
|---|---|
| MARK NELSON and SARAH NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a national banking association,<br><br>Defendant. | **COMPLAINT<br>AND<br>JURY DEMAND**<br><br>Case No. 25-cv-1106<br><br>Judge _____ |

Plaintiffs Mark and Sarah Nelson for their complaint state:

## PARTIES

1. Plaintiffs Mark and Sarah Nelson are residents of Salt Lake County, Utah.

2. Defendant Wells Fargo Bank, N.A. is a national bank with its main office in Sioux Falls, South Dakota.  Wells Fargo does business in Utah.  Wells Fargo is a financial institution as defined by the Electronic Funds Transfer Act (EFTA). 15 U.S.C. § 1963a(9).

## JURISDICTION AND VENUE

3. This court has federal question jurisdiction because this case includes a claim under the Electronic Funds Transfer Act 15 U.S.C. § 1963 et. seq. 28 U.S.C. § 1331. The court has supplemental jurisdiction over the related state law claims.

4. Venue is proper in this district. 28 U.S.C. 1391(b)(3).

## FACTS

**Consumer Checking Account**

5. Mark and Sarah Nelson are parties to a consumer checking account with Wells Fargo. The Nelsons' consumer checking account is a demand deposit account established primarily for personal and family purposes and is an account within the meaning of the EFTA. 15 U.S.C. §1693a.

6. The Wells Fargo consumer checking account provides consumers access to wire transfer services via the Wells Fargo website.

**Identity Theft**

7. In April 2025 Mark and Sarah Nelson became the victims of identity theft.

8. In or before April 2025 an unknown party gained unauthorized access to the Nelsons' consumer checking account and Mark Nelson's Verizon telephone account.

9. The Nelsons do not know how the person gained access to their online banking account and Mark Nelson's cellular telephone. The Nelsons did not make, authorize, or participate in the transfers.

**The Identity Thief Sent Payment Orders to Wells Fargo**

10. The Nelsons' consumer checking account is linked to an online banking platform that allows wire transfers. On the Wells Fargo online banking platform, the first step in sending a wire transfer is to send a payment order.

11. Having gained access, the unauthorized person(s) presented three payment orders to Wells Fargo using the Nelsons' consumer checking account and online banking platform.

**Wells Fargo Accepted the Fraudulent Payment Orders**

12. Wells Fargo accepted the three payment orders.

13. Wells Fargo sent the following wires:

    a. On April 16, 2025, Wells Fargo sent a wire in the amount of $25,000.00 to PNC Bank, for the benefit of Emmanuel Oteng.

    b. On April 17, 2025, Wells Fargo sent a wire in the amount of $25,000.00 to PNC Bank, for the benefit of Emmanuel Oteng.

    c. On April 18, 2025, Wells Fargo sent a wire in the amount of $17,850.00 to PNC Bank, for the benefit of Emmanuel Oteng.

14. The total of the unauthorized transfers is $67,850.00.

15. Mark and Sarah Nelson do not know Emmanuel Oteng.

16. Mark and Sarah Nelson did not authorize, directly or indirectly, any wire transfer to Emmanuel Oteng.

**Wells Fargo Failed to Detect Obvious Fraud**

17. The two $25,000.00 wire transfers were an obvious anomaly and red flag for Wells Fargo given the Nelsons' prior banking history.

18. The $17,850.00 wire transfer was also an obvious anomaly and red flag for Wells Fargo given the Nelsons' prior banking history.

19. None of the transactions were remotely consistent with the Nelsons' normal banking activity and they each should have been detected by Wells Fargo's fraud systems, but Wells Fargo did not stop a single transfer.

20. Mark Nelson notified Wells Fargo of the unauthorized transfers by telephone on April 19 and in person on April 21, 2025, but Wells Fargo failed to take appropriate action to investigate or remedy the situation or issue provisional credits.

21. Wells Fargo should have flagged these transactions as suspicious due to several red flags including: unusual transaction patterns inconsistent with the Nelsons' typical banking behavior; unusual high-value amounts inconsistent with the Nelsons' typical banking behavior; unusual recipient inconsistent with the Nelsons' typical banking behavior; and geographic anomalies. Wells Fargo's failure to apply commercially reasonable fraud detection methods to the transactions caused the loss in this case.

22. Despite these red flags and the notification from Plaintiff, Wells Fargo failed to provisionally recredit the account within the ten-day period specified by EFTA.

23. By letter dated May 19, 2025 Wells Fargo denied the Nelsons' request for a refund.

24. Wells Fargo did not conduct a good faith investigation of the alleged errors and did not have a reasonable basis for believing the consumer's account was not in error.

25. Wells Fargo knowingly and willfully concluded that the consumer's account was not in error, a conclusion that could not reasonably have been drawn from the evidence available at the time of the investigation.

26. Wells Fargo did not use commercially reasonable security procedures to protect Mark and Sarah Nelson from identity fraud.

27. A commercially reasonable security measure must reasonably verify the identity of the person requesting the wire transfer to ensure the request is a genuine request made by the account holder.

28. In 2011 Federal Deposit Insurance Corporation issued a Supplement to Authentication in Internet Banking Environment, which requires banks to use authentication techniques such as device authentication, sophisticated challenge questions, and fraud detection and monitoring systems that include consideration of customer history and behavior and enable a timely and effective bank response. The Supplement indicates that manual or automated transaction monitoring and anomaly detection should be used to detect wire transfer fraud.

29. Wells Fargo did not use a procedure to ensure that the person authorizing the anomalous wires was in fact Mark or Sarah Nelson or was authorized by the Nelsons.

30. Wells Fargo did not use a commercially reasonable security procedure.

31. Wells Fargo did not use a security procedure that meets industry standards.

32. The account agreement contains broad and ambiguous language and does not set forth a specific security procedure to which the Nelsons could agree.

33. Because there is not a specific security procedure set forth in the account agreement, Mark and Sarah Nelson did not agree upon any specific security procedure.

34. In honoring the payment orders, Wells Fargo did not act in commercial good faith. The wire transfers were anomalous in sequence and amount, the Nelsons did not have any prior history in sending wires to PNC Bank, the Nelsons did not have any prior history in sending wires to Emmanuel Oteng. These facts and circumstances were red flags that render Wells

Fargo's actions in honoring the wires in bad faith and commercially unreasonable and not in good faith.

35. For example, by comparison, on April 15, 2025, for another account held by Mark Nelson, Chase Bank detected a fraudulent request for a payment order and did not process the requested wire transfer.

36. Wells Fargo should have identified that the beneficiary, Emmanuel Oteng, was not a person in the Nelsons' banking history and was anomalous.

37. The unauthorized persons engaged in identity fraud did not have authorization from Mark or Sarah Nelson and did not obtain any information facilitating breach of the security procedure from Mark or Sarah Nelson.

38. Immediately after Mark Nelson realized his telephone and online banking account had been compromised, on Saturday April 19, 2025, he contacted the Wells Fargo fraud department by telephone to report the fraud and open a fraud case, No. 299-4069-88.

**Wells Fargo Failed to Conduct a Good Faith Investigation**

39. When Mark Nelson complained to Wells Fargo about the unauthorized transfers, Wells Fargo did not investigate in good faith. Instead, by a modified form letter dated May 21, 2025, Wells Fargo, erroneously, informed the Nelsons' that it had no responsibility for the transfers because they were made by wire.

40. Wells Fargo did not investigate how the fraudulent actors were able to gain access to Mark Nelson's online banking platform and telephone.

41. Although Wells Fargo claimed it sent notices concerning the wire transfers on the Nelsons' account, Wells Fargo did not describe the notices and Wells Fargo did not state it sent any sophisticated challenge question that only the Nelsons could answer.

42. The May 21, 2025 letter from Wells Fargo to Mark Nelson did not address the fact that the fraudulent payment orders were from the Nelsons' consumer checking account and are within the EFTA.

43. Wells Fargo did not provisionally credit the Nelsons' account with the ten-day period.

44. Wells Fargo denied the Nelsons' requests to refund the substantial funds Wells Fargo sent without authorization to Emmanuel Oteng.

**FIRST CAUSE OF ACTION**
*Violation of Electronic Fund Transfer Act*
*15 U.S.C. § 1693 et seq.*

45. The Nelsons' consumer checking account with Wells Fargo is a demand deposit account established primarily for personal and family purposes and is an account within the EFTA. 15 U.S.C. §1693a.

46. The payment orders submitted to Wells Fargo are regulated by the Electronic Funds Transfer Act. 15 U.S.C. § 1693 et seq.

47. Under the EFTA and Regulation E, consumers are protected against unauthorized electronic fund transfers. 15 U.S.C. § 1693 et seq.; 12 C.F.R. Part 1005. The EFTA allocates losses from unauthorized electronic fund transfers from the consumer to the financial institution. 15 U.S.C. §1963g.

48. Under the EFTA an "electronic funds transfer" means "means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7).

7

49. Under 12 C.F.R. § 1005.2(m), an "unauthorized electronic funds transfer" "means an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit."

50. The EFTA encompasses the payment orders at issue in this case.[1]

51. The transactions at issue are covered by EFTA because they were initiated electronically through Wells Fargo's online banking platform linked to the Nelsons' consumer checking account, even though they were subsequently processed as wire transfers. The transfer of funds took place between the Nelsons and Wells Fargo separate from that which occurred via the subsequent wire transfer.

52. Wells Fargo first conducted an intra-bank electronic fund transfer that debited the Nelsons' consumer checking account and moved the money to a pooled Wells Fargo account. Only after this initial electronic fund transfer did Wells Fargo send the funds over a wire service to another bank.

53. This initial electronic fund transfer from the Nelsons' account to Wells Fargo's pooled account constitutes an "electronic fund transfer" under EFTA, separate from the subsequent wire transfer between banks.

54. The transactions meet the definition of "unauthorized electronic fund transfer" under 12 C.F.R. § 1005.2(m), as they were initiated by a person other than Mark Nelson without actual authority and from which the Nelsons received no benefit.

---

[1] *New York v. Citibank, N.A.*, 763 F. Supp. 3d 496, 522 (S.D.N.Y. 2025)

55. The transactions are unauthorized fund transfers within 15 U.S.C. § 1963g because they were not authorized by the Nelsons and Mark Nelson provided notice within two business days.

56. Wells Fargo failed to comply with the EFTA and Regulation E by allowing unauthorized transfers to occur and failing to properly investigate and resolve the reported errors.

57. Wells Fargo allowed unauthorized electronic fund transfers to occur, for which the Nelsons are not liable because they were reported promptly. 15 USC 1693g(a); 12 CFR 1005.6.

58. Wells Fargo did not provisionally credit the Nelsons' account within 10 business days during the investigation of the alleged error. 15 USC 1693f(c); 12 CFR 1005.11(c)(2)(i).

59. Wells Fargo did not promptly investigate claims of unauthorized electronic fund transfers. 15 USC 1693f; 12 CFR 1005.11.

60. Although Wells Fargo was aware that an unauthorized debit from a consumer account in connection with a wire transfer is within the EFTA in light of *New York v. Citibank, N.A.*, 763 F. Supp. 3d 496, 522 (S.D.N.Y. 2025), Wells Fargo refused to investigate the facts surrounding the unauthorized consumer account debit and Wells Fargo refused to acknowledge its liability under the EFTA.

61. The unauthorized persons were able to access the Nelsons' consumer checking account due to Wells Fargo's lack of commercially reasonable scrutiny of suspicious activity and relaxed security methods.

62. Wells Fargo's actions have caused the Nelsons significant financial harm, severe emotional distress, disruption to the Nelsons' financial stability, and ongoing credit and security concerns.

63. Mark Nelson provided timely notice that the payment orders were not authorized. Mark Nelson provided notice to Wells Fargo no later than one day after discovering the fraudulent wire transfers.

64. Despite this notice, and in violation of the statute, Wells Fargo refuses to accept liability for the unauthorized payment orders in violation of the EFTA.

65. As a result of Wells Fargo's violation of the ETA, the Nelsons are entitled to actual damages in an amount not less than $67,850.00, statutory penalties, and attorney fees. 15 U.S.C. §1963g.

66. The Nelsons are further entitled to and seek treble damages in the amount of $203,550 as provided under the EFTA due to Wells Fargo's failure to provisionally credit the funds transferred from their account, failure to conduct a good faith investigation of the alleged error(s), finding no error despite lack of a reasonable basis for believing none occurred, and willfully and/or knowingly concluding that the account was not in error, when such conclusion could not reasonably have been drawn from the evidence available at the time of investigation. 15 U.S.C. § 1693f.

## SECOND CAUSE OF ACTION
*Utah Code Ann. § 70A-4a-202*

67. This claim is asserted in the alternative. Utah Code Ann. § 70A-4a-108(2).

68. A payment order is not effective as to the Nelsons if Wells Fargo did not use a "*commercially reasonable method of providing security against unauthorized payment orders.*" Utah Code Ann. § 70A-4a-202(2)(a)(i).

69. Wells Fargo did not use a commercially reasonable method of providing security against the unauthorized payment orders.

70. Wells Fargo did not use sophisticated challenge questions that only Mark or Sarah Nelson would know.

71. In addition, Wells Fargo did not act in a commercially reasonable manner in failing to detect the wires were anomalous in nature and amount.

72. Wells Fargo did not identify the recipient Emmanuel Oteng as suspicious, although wire transfers in large amounts to an individual were an obvious anomaly in the Nelsons' banking history with Wells Fargo.

## THIRD CAUSE OF ACTION
*Utah Code Ann. § 70A-4a-203*

73. This claim is asserted in the alternative. Utah Code Ann. § 70A-4a-108(2).

74. The payment orders for the wire transfers totaling $67,850.00 were not made, directly or indirectly, by a person entrusted by Mark or Sarah Nelson with duties to act for them.

75. The unknown persons who made the payment orders for the wire transfers totaling $67,850.00 did not obtain access to the Nelson's online banking account from the Nelsons and did not obtain information facilitating breach of the security procedure from the Nelsons.

76. Wells Fargo is not entitled to enforce or retain payment of the payment order. Wells Fargo must refund its payment of the payment orders and must pay interest. Utah Code Ann. § 70A-4a-204(1)(a).

## FOURTH CAUSE OF ACTION
*Negligence*

77. The Nelsons deposited their hard-earned funds in a Wells Fargo consumer checking account. Wells Fargo had a duty to use reasonable care in protecting the Nelsons' money.

78. When Wells Fargo allowed a hacker to send suspicious wires to a man named Emmauel Oteng, when Wells Fargo disregarded red flags, when Wells Fargo failed to follow industry security standards; when Wells Fargo failed to ask the hacker a standard sophisticated security question, and by Wells Fargo's other acts and omissions, Wells Fargo breached its duty to the Nelsons.

79. The Nelsons lost $67,850, incurred mental stress and anguish, and have incurred attorney fees as a proximate cause of Wells Fargo's breach.

80. As a result of Wells Fargo's breach of its duties, the Nelsons have been damaged in an amount to be determined.

<b><u>FIFTH CAUSE OF ACTION</u></b><br><i>Breach of Contract</i>

81. The Nelsons and Wells Fargo were parties to an online banking agreement.

82. The parties' contract required that Wells Fargo refrain from sending the Nelsons' funds to a fraudulent recipient in a transaction the Nelsons were neither aware of nor authorized.

83. The parties' contract required Wells Fargo to use a commercially reasonable security procedure. Wells Fargo represented it would use a reasonable security procedure including, without limitation, the use of security questions. Wells Fargo represented it would require "you" meaning the Nelsons, "*to answer security questions, use random number generators, or one-time passcodes to further verify an Order initiated on the Website from your Wires Funding Eligible Account*." Wells Fargo thus promised that it would use security measures to insure "you"— the Nelsons— authorized any transaction.

84. The parties' contract provides Wells Fargo will be liable for its negligence in relation to wire transfers from the Nelsons' consumer account: "*Unless prohibited by law, Wells Fargo will only be liable for its negligence or willful misconduct*."

85. By allowing a hacker to send suspicious wires to a man named Emmauel Oteng, by disregarding red flags, by failing to follow industry security standards, by failing to ask the hacker a sophisticated security question as represented in the contract, and by its other acts and omissions, Wells Fargo breached the contract.

86. As a result of Wells Fargo's breach, the Nelsons have been damaged in an amount to be proven.

## SIXTH CAUSE OF ACTION
### *Breach of Implied Covenant of Good Faith and Fair Dealing*

87. The Wells Fargo online access agreement contains a covenant of good faith and fair dealing prohibiting Wells Fargo from injuring or preventing the Nelsons' right to receive the benefits of the contract.

88. By its acts and omissions set forth above, Wells Fargo breached the covenant of good faith and fair dealing.

89. As a result of Wells Fargo's breach, the Nelsons have been damaged in an amount to be proven.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 Plaintiffs demand a jury on all issues so triable.

Plaintiffs seek judgment as follows:

1. Actual damages;

2. Treble damages under 15 U.S.C. §1693f(e);

3. Punitive damages;

4. Statutory penalties;

5. Interest;

6. Attorney fees; and

7. Appropriate equitable relief.

DATED: December 8, 2025

*/s/ Sam Meziani*
Sam Meziani
Amberly Page
*Attorneys for Plaintiffs*